**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Dwayne Pitre,
Petitioner
-vs-
Tara Diaz, et al.,
Respondents.

CV-12-0249-PHX-PGR (JFM)

**Report & Recommendation**
**on Petition for Writ Of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Buckeye, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 6, 2012 (Doc.1).  On June 28, 2012, Respondents filed their Answer (Docs. 10-14).  Petitioner has not replied.

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. PROCEEDINGS AT TRIAL

Petitioner was charged with five counts of armed robbery, five counts of kidnapping, three counts of aggravated assault and one count of theft of a means of transportation.  (Exhibit F, Mem. Dec. 2/7/06 at 2.)  (Exhibits to the Answer, Doc. 11 are referenced herein as "Exhibit ___.")  The charges arose out of the armed robbery of a grocery store in Phoenix, Arizona on January 20, 2002.  (Exhibit G, PCR Pet. at Exhibit

1

F, Craig Affidavit.)

The state offered a plea agreement which would have allowed Petitioner to plead to two Class 2, dangerous felonies, with sentences up to 21 years, to be served concurrently.   Petitioner rejected the offer.  (Exhibit G, PCR Pet. at Exhibit B, Joint Pretrial Statement.)

The state sought to impeach Petitioner with: (1) a 1994 conviction for possession of narcotic drugs; (2) a 1989 conviction for resisting arrest; (3) a 1987 conviction for solicitation to possess cocaine; and (4) a 1986 conviction for theft.  The trial court ruled that all four convictions could be used for impeachment, and that the nature of the convictions would not be sanitized.  Petitioner did not testify at trial, and therefore the priors were not admitted.  (Exhibit F, Mem. Dec. 2/7/06 at 2-3.)   The state agreed that none of the priors constituted dangerous offenses.

Petitioner was convicted by a jury of all fourteen counts.  (Exhibit F, Mem. Dec. 2/7/06 at 3.)   The jury found the armed robbery, kidnapping, and aggravated assault offenses to be "dangerous offenses."  (Exhibit U, R.T. 9/10/2 at 2-5.)

At sentencing, the state "elected" to treat the dangerous offenses as non-dangerous" for sentencing purposes.  (Exhibit V, R.T. 5/23/03 at 3-5.) This "election" arose from an anomaly in the applicable sentencing statutes, which provided that "dangerous offenses" could be sentenced at a higher repeat offender level, only if the priors were themselves "dangerous."   In contrast, if the same crime was treated as a "non-dangerous" offense, then "non-dangerous" priors could be used for enhancement. Because all of Petitioner's priors were "non-dangerous", his highest possible sentence for a "Class 2" "dangerous" offense was 21 years.  On the other hand, if the same "Class 2" offense was deemed "non-dangerous," and the multiple "non-dangerous" priors were used to enhance the sentence, then the maximum sentence increased to 28 years.  *See State v. Knorr*, 186 Ariz. 300, 921 P.2d 704 (App. 1996).  (*See also* Exhibit W, 2001 Criminal Code, Sentencing Ranges at 3.)

Petitioner was sentenced to a combined sentence of 160 years in prison. (*Id.*; Exhibit A, Sentence.)

## B.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal, arguing that the trial court abused its discretion and violated Petitioner's state and Federal rights to testify by its ruling on the use of his prior convictions.  (Exhibit B, Opening Brief).  In a Supplemental Brief (Exhibit C), Petitioner argued that his sentence violated the recent decision in *Blakely*.

In a published decision, *State v. Pitre*, 107 P.3d 939, 210 Ariz. 93 (App. 2005), the Arizona Court of Appeals affirmed Petitioner's convictions, found Petitioner's attack on the ruling on the prior convictions, but vacated the sentence, and remanded the case or re-sentencing in light of *Blakely*.

The Arizona Supreme Court summarily granted the state's petition for review, and remanded to the Court of Appeals for reconsideration in light of intervening opinions.  (Exhibit E, Order 11/30/05.)

On remand, the Arizona Court of Appeals again rejected the prior convictions claim, and found the sentence complied with *Blakely* because at least one factor (prior convictions) relied upon to aggravate Petitioner's sentence was admitted by Petitioner, and the reliance upon addition judge-determined facts to select an aggravated sentence was not prohibited by *Blakely*.  Consequently, the court affirmed Petitioner's convictions and sentences.  (Exhibit F, Mem. Dec. 2/7/06.)

## C.  PROCEEDINGS ON POST-CONVICTION RELIEF

On February 28, 2006, Petitioner filed a timely Notice of Post-Conviction Relief. Appointed counsel espoused an inability to find an issue for review.  Retained counsel then filed a Petition for Post-Conviction Relief  (Exhibit K, Pet. Rev. at 4.)  In his Petition (Exhibit G), Petitioner argued that he received ineffective assistance of counsel because: (1) trial counsel failed to interview an exculpatory witness; (2) trial counsel

failed to inform Petitioner of the potential for consecutive sentencing; (3) trial counsel misinformed Petitioner as to the potential sentences on the Class 2, 3 and 4 felonies, a total of 40 years difference; and (4) trial and appellate counsel failed to challenge the imposition of a higher sentence for repetitive non-dangerous offenses despite the jury's determination that the offenses were dangerous.

The PCR court summarily disposed of the last claim, citing *State v. Knorr*, and set an evidentiary hearing on the remainder of the petition. (Exhibit H, M.E. 11/24/08.) The hearing was held on February 27, 2009. (Exhibit I, M.E. 2/27/09; Exhibit W, R.T. 2/27/09.)

On March 4, 2009, the PCR court granted the petition, finding: (1) a lack of prejudice, and thus no ineffective assistance, from failure to call the exculpatory witness; (2) ineffective assistance in failing to inform Petitioner of his sentencing exposure at trial, including the potential for a sentence beyond approximately 100 years, and the potential for an election to sentence under the non-dangerous repetitive offense statutes. The PCR court ordered Petitioner's convictions and sentences vacated, and remanded the case for a new trial.

The state filed a Petition for Review (Exhibit K), challenging the PCR court's determination on both the deficient performance and prejudice prongs of the ineffective assistance standard. Petitioner filed a Cross-Petition for Review (Exhibit L), challenging the PCR court's rejection of his challenge to the state's election to treat the offenses as non-dangerous, as well as the ineffectiveness claim concerning the exculpatory witness.

The Arizona Court of Appeals rejected Petitioner's objections, granted the State's petition and vacated the PCR court's grant of relief, finding that because of Petitioner's adamancy against a plea with prison time, there was no prejudice from the failure to properly advise him on his sentencing exposure at trial. (Exhibit M, Order 5/18/10.)

On February 8, 2011, the Arizona Supreme Court summarily denied Petitioner's petition for review of the appellate court's decision. (Exhibit N, M.E. 2/8/11.)

/ /

4

**D.  PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 6, 2012 (Doc.1).  Petitioner's Petition asserts the following four grounds for relief:

(1) ***Blakely*** - he was sentenced in violation of the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), and the Fifth and Fourteenth Amendments;

(2) **IAC re Exculpatory Witness** - he received ineffective assistance of counsel as a result of failure to call an exculpatory witness;

(3) **IAC re Sentencing Election**  - he received ineffective assistance of counsel as a result of trial and appellate counsel's failure to challenge the state's election to sentence him for non-dangerous, repetitive offenses;

(4) **IAC re Sentencing Exposure**  - he received ineffective assistance as a result of trial counsel's failure to properly advise him on his sentencing exposure at trial.

**Answer** - On June 28, 2012, Respondents filed their Answer (Docs. 11-14). Respondents concede exhaustion and argue that Petitioner's claims are without merit.[1]

**Reply** – The Court's service Order provided that "Petitioner may file a reply within 30 days from the date of service of the answer." (Doc. 7 at 4.)  Petitioner has not filed a reply, and the time to do so has expired.

**III. APPLICATION OF LAW TO FACTS**

**A. HABEAS STANDARDS**

**Federal Law Determinations** - For state prisoners, habeas relief is only warranted if the state court's decision of a matter was "contrary to, or an unreasonable

---

[1] The undersigned notes that Doc. 12-5 and Doc. 13-main appear to be duplicates of each other, each providing pages 150-163 of Exhibit Q (R.T. 9/4/02) and pages 1-79 of Exhibit R (R.T. 9/5/02).  The balance of Exhibit Q is provided in Docs. 12-3 and 12-4. The balance of Exhibit R is provided in Docs. 13-1 and 13-2.  The undersigned strongly discourages combining split portions of multiple exhibits into a single attachment.

application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).

The Supreme Court has instructed that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

"A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Anthony v. Cambra*, 236 F.3d 568, 578 (9th Cir. 2000).

**Factual Determinations** - Federal courts are also authorized to grant habeas relief to state prisoners in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry the facts of his case in the federal courts.  There is a well-established presumption of correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

Finally, a state prisoner may not introduce into the habeas court new evidence if he has failed to develop the factual basis for his claim in the state proceedings.  28

U.S.C. § 2254 (e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> (A) the claim relies on--
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

## B. GROUND ONE: *BLAKELY*

In his Ground One, Petitioner argues that his sentence was a violation of *Blakely*. Petitioner does not elucidate the factual support for his contention beyond pointing to his Attachment B, the Arizona Court of Appeals' now-vacated, original Memorandum Decision.

Petitioner's *Blakely* claim was rejected by the Arizona Supreme Court pursuant to its decisions in *State v. Martinez*, 210 Ariz. 578, 115 P.3d 618 (2005) and *State v. Henderson*, 210 Ariz. 561, 115 P.3d 601 (2006). (Exhibit E, Order 11/30/05.) In those cases, the Arizona Supreme Court held that under Arizona law, the maximum sentence possible for a crime is the aggravated sentence, once any aggravating factor is found. A judicial finding of additional aggravating circumstances as a basis for selecting a particular actual sentence was deemed irrelevant for purposes of applying *Blakely's* mandate that a jury must find beyond a reasonable doubt any fact that is legally essential to the punishment. Once an aggravating circumstance was properly found (*e.g.* by admission, by a jury, or by a judicial finding of a prior conviction), "[t]he Sixth Amendment then allows a judge to find additional facts by a preponderance of the evidence, as long as the sentence imposed does not fall outside the statutorily prescribed sentencing range." *Henderson*, 210 Ariz. at 569, 115 P.3d at 609.

The federal courts have cited the *Martinez* analysis approvingly. For example, in

*Van Norman v. Schriro*, 616 F.Supp.2d 939 (D.Ariz. 2007), Judge Campbell concluded:

> In this case, the trial court properly considered Petitioner's prior convictions as an aggravating circumstance that increased the maximum allowable sentence under *Blakely*. Once the new maximum was established, the court was free to consider the aggravating circumstances of harm to the victim and danger to the public in deciding where to sentence Petitioner within the new maximum range.

*Id.*at 944.  *See also Gonzalez v. Ryan*, 2010 WL 8741428 (D.Ariz. 2010) (enumerating cases).

Similarly, in vacating its earlier decision in Petitioner's case, the Arizona Court of Appeals relied on *Martinez* and concluded:

> Here, the superior court properly used one of the factors to aggravate Pitre's sentences:  two prior non-dangerous felony convictions to which Pitre admitted. Pursuant to *Martinez*, the superior court's aggravated sentences in reliance on other aggravating factors was not erroneous.

(Exhibit F, Mem. Dec. at 7-8 (citations omitted).)

Petitioner make no showing that this was in error. The undersigned finds no error. Accordingly, Petitioner's Ground One is without merit and should be denied.

## C.  GROUND TWO: IAC RE EXCLUPATORY WITNESS

For his Ground Two for relief, Petitioner argues that he received ineffective assistance when trial counsel failed to call eyewitness Jenni Felix.  Felix would have testified that the perpetrator had his face covered by a mask the entire time after leaving the store and absconding, thereby impeaching the testimony of other witnesses outside the store who identified Petitioner as the perpetrator.  (*See* Exhibit G, PCR Pet. at Exhibit F, Affid. of Craig; and Exhibit W, R.T. 2/27/09 at 4-8.)

The PCR court rejected this claim, finding:

> Ms. Felix was listed in the police report and purportedly would have testified that the suspect in the robbery was wearing a ski mask as he exited the grocery store which prevented her from identifying the suspect. The Court finds the testimony of another eyewitness at trial, Officer Blackshear, conflicted with Felix's testimony on the

issue of the suspect wearing a ski mask as he exited the store. The Court further finds there were other eyewitnesses who identified the Defendant as the person who committed the robbery and other offenses that night. Accordingly, the Defendant has failed to establish that there was a reasonable probability that the outcome of the trial would have been different if Ms. Felix had been called as a witness in Defendant's case.

(Exhibit J, M.E. 3/4/09 at 1-2.)[2]   The Arizona Court of Appeals summarily rejected the claim, stating:  "The trial court clearly identified the issues presented and correctly ruled on the claims."  (Exhibit M, Order 5/18/10 at 6, n. 2.)

**Ineffective Assistance Standard** - Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).   In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at  687-88.   Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

**No Showing of Prejudice** - Petitioner offers no explanation why the PCR court's finding of a lack of prejudice was in error.  In his Cross-Petition for Review, he simply argued that "Officer Blackshear's identification was the only unimpeached fact linking Mr. Pitre to the crimes," and dismissed the other identifications as having "far lesser impact than Officer Blackshear."  (Exhibit L, Cross-Petition at 11.)

Phoenix Police Officer **Blackshear** testified that upon responding to the robbery call, he pulled into the parking lot, and saw the suspect leaving the store carrying a bag.

---

[2] Respondents characterized the PCR court's ruling as a finding of an absence of both deficient performance and prejudice.  (Answer, Doc. 11 at 19.)  To the contrary, the PCR Court merely decided that "Defendant failed to demonstrate his counsel was ineffective," (Exhibit J, M.E. 3/4/09 at 1) and explained that this determination was based on Petitioner's failure "to establish that there was a reasonable probability that the outcome of the trial would have been different" (*id.* at 2). Thus, the PCR court, like the undersigned, did not address the deficient performance prong, but relied upon the absence of prejudice to reject the claim.

Blackshear slammed on his breaks, causing his brakes to squeal.  At that time, the suspect looked up at him, and then pulled a black ski mask over his face. At that time, the suspect was closer to Blackshear than Officer Dodd.  He was 25 to 30 yards away, and saw the suspect who he identified as Petitioner.  The suspect was carrying a gun.  He saw Dodd chase Petitioner behind the store.  Blackshear drove around the buildings and saw Petitioner jump over a fence into a residential back yard.  Blackshear reversed and drove around and then saw Petitioner, with Dodd in pursuit.  Petitioner was no longer wearing his jacket.  Petitioner then entered an alleyway.  Blackshear drove his car to cut him off, and entered the alleyway from the other end.  He arrived as Officer Campbell was helping Petitioner up off the ground, handcuffed.  He shined his flashlight on Petitioner and identified him as the perpetrator exiting the store.  He then went to the residential yard and found the gun, ski mask and jacket and hood worn by the perpetrator.  (Exhibit R, R.T. 9/5/02 at 132-153.)  The defense attempted to impeach Officer Blackshear by suggesting that he was biased because of a claim that Blackshear had used excessive force claim by slapping Petitioner in the face after he had been subdued and handcuffed.

Clearly, Ms. Felix's testimony contradicted Officer Blackshear's on whether the perpetrator had his face uncovered outside the store.  However, as noted by the PCR Court, there was a variety of other identifying evidence introduced at trial, albeit impeached in various ways.

The store's relief manager, victim Maria **Ruelas**, admitted that the perpetrator was wearing a mask the entire time, and that she only saw his eyes and mouth.  Nonetheless, she identified Petitioner as the perpetrator, a regular customer who she had attended six times, and who was in the store as much as two or three times per day.  She recognized his eyes which she described as "different."  (Exhibit P, R.T. 9/3/02 p.m., at 150-153.)  She also reported identifying Petitioner in a photo lineup.  (*Id.* at 10.)  The defense attempted to impeach Ruelas by suggesting that store personnel had convinced each other that Petitioner was the perpetrator.

The store's night cashier, victim Crystal **Kingsley**, described the perpetrator only as wearing a mask, an African-American, with a deep disgruntled voice.  Nonetheless, she was able to identify Petitioner in a police photo lineup and at trial, because she had recognized him as a regular customer at the store from his eyes, his voice and the size of his lips.  (Exhibit Q, R.T. 9/4/02 at 53-58, 67-68.)

The fiancée of Marie Ruelas, victim Robert **Tristan**, identified Petitioner as the perpetrator, who he described as removing his mask on two occasions for 20 to 30 seconds.  This occurred while the perpetrator was sitting next to Tristan in his car before entering the store.  (Exhibit Q, R.T. 9/4/02 at 79-85.)  He had previously identified Petitioner from a photo lineup. (*Id.* at 94-95.)[3]  The defense attempted to impeach Tristan by showing that he had not early on related to police officers that the perpetrator had raised his mask, and intimations that store personnel had convinced each other that Petitioner was the perpetrator.

Phoenix Police Officer **Dodd** described responding to a robbery call at the store and encountering a suspect exiting the store, carrying a bag, wearing a mask.  He described ordering the perpetrator to stop, him dropping the bags and running around the store into the alley, and hopping a fence into a residential yard.  Dodd waited a few seconds to follow, and after reaching the street saw a citizen pointing down the street, where he saw the suspect run into an alley.  Dodd directed a patrol car down the alley, lost sight of the suspect for seconds, and then saw the suspect about to be arrested.  The suspect, Petitioner, was arrested, approximately a quarter of a mile from the store. Despite having twice lost sight of the perpetrator, and never having seen his face, Dodd expressed no doubt that Petitioner was the same person who exited the grocery store and that he had chased to that location.  They located a gun and black ski mask in the

---

[3]  The store's night cashier, victim Alejandra Arvizu, testified that she identified Petitioner from a photo lineup as a regular customer, but couldn't identify him as the perpetrator. (Exhibit Q, R.T. 9/4/02 at 128-129.)  The store's bagger, victim Jose Flores, testified that the perpetrator who went inside the store was wearing a mask, that he could not identify the perpetrator, but recognized Petitioner as a regular customer at the store. (Exhibit R, R.T. 9/5/02 at 1-11.) He saw the perpetrator leaving the store, and saw the police tell him to stop.  (*Id.* at 18-19.)

11

1   residential yard in the area where the suspect had hopped the fence. A jacket was later

2   found in the yard.  Where the suspect had dropped the bags, there was money scattered.

3   (Exhibit R, R.T. 9/5/02 at 31-48.)   Officer Dodd conceded that the suspect exited the

4   store with the ski mask on and he did not see the suspect without the mask while he was

5   leaving the store.  (*Id.* at 53-54; 85.)  The defense attempted to impeach Officer Dodd by

6   suggesting that he was biased because of a claim that Dodd had used excessive force

7   claim by doing a "knee drop"on Petitioner's back he had already been subdued.

8          Phoenix Police Officer **Campbell** described responding to reports of the robbery,

9   encountering Officer Dodd who directed him down an alleyway.  He saw the Defendant

10  going down the alleyway, out of breath, sweating profusely.  Campbell pursued him,

11  ordered him to put his hand in the air and get on the ground.  When Officer Blackshear

12  arrived, he directed his flashlight on Defendant and said "that's him." (Exhibit R, R.T.

13  9/5/02 at 100-108.)

14         Phoenix Police Officer **Aldredge** testified that when interviewing victim Robert

15  Tristan that Tristan did not report having seen the perpetrators face.  (Exhibit S, R.T.

16  9/6/02 at 54-57.)  Aldredge did not ask if the perpetrator had lifted up his mask.  (*Id.* at

17  59.)

18         Phoenix Police Detective **Salgado** testified that victim Robert Tristan identified

19  Petitioner from a photo lineup.  (Exhibit S, R.T. 9/6/02 at 76-77.)   However, his

20  identification was based on the perpetrator's eyes, and he did not report seeing the

21  perpetrator's face.  (*Id.* at 88-89.)  Victim Maria Rueleas also identified Petitioner from a

22  photo lineup, basing her identification on the eyes of the perpetrator.  (*Id.* at 79.)

23  However, she had not recognized him until afterwards, even though he was a frequent

24  customer.  (*Id.* at 94-95.)  Victim Crystal Kingsley identified Petitioner from the photo

25  lineup as being a regular customer, but could not identify him as the perpetrator. (*Id.* at

26  80.)  She said she recalled the perpetrator as having full lips like two subjects in the

27  photos, one of which was Petitioner.  (*Id.* at 97-98.)

28         The jury was permitted to view the **surveillance videotape** of the robbery, and to

12

view Petitioner in the clothing recovered from the surrounding area.  (Exhibit S, R.T. 9/6/02 at 119-120.)

Phoenix Police Officer **Ray** described stopping Petitioner in the alleyway where Petitioner was walking. Petitioner was sweating and breathing heavily.  (Exhibit S, R.T. 9/6/02 at 123-124, 130.)

Phoenix Police Officer **Aronson** testified that victim Robert Tristan approached him, described his involvement, and indicated he might be able to identify on or more suspects.  He did not relate that a suspect had lifted up a mask, but the officer did not ask, and was speaking with Tristan while focusing on maintaining a perimeter looking for the suspects.. (Exhibit T, R.T. 9/9/02 at 11-12, 21-22.)

**Summary re Identification** - Thus, Petitioner had been directly identified as the perpetrator by not only Officer Blackshear, but also by victims Maria Ruelas, Crystal Kingsley, and Robert Tristan, and by Officer Dodd.  In addition, the circumstances of Petitioner's apprehension by Officers Campbell and Ray pointed to Petitioner's involvement.

Further, the jury had the opportunity to compare the surveillance videotape to Petitioner in the clothes recovered from the scene.  The circumstances of Petitioner's apprehension bolstered the eyewitness identifications, including: his presence in a dark alleyway late at night in the vicinity of the robbery and ensuing pursuit, Dodd's close (albeit not uninterrupted) pursuit, his heavy breathing and profuse sweating, and his lack of an explanation for his presence in the alleyway or heavy breathing and sweating.

Moreover, the un-presented testimony of Ms. Felix was cumulative to that of Officer Dodd, whose testimony reflected that Petitioner was wearing the mask from the time he exited the store until he scaled the wall into the residential yard.

Thus, despite the questions concerning the various identifications other than Officer Blackshear's, the undersigned cannot find a reasonable probability that the outcome of the proceeding would have been different had Ms. Felix been called to testify and to further impeach Officer Blackshear's testimony.

1    Even if the undersigned could find a reasonable probability that the outcome
2  would have been different, the undersigned could not find that the PCR court's finding to
3  the contrary was an unreasonable determination of the facts or an unreasonable
4  application of or contrary to federal law.

5    Accordingly, Petitioner's Ground Two is without merit and must be denied.

6

7  **D.  GROUND THREE: IAC RE SENTENCING ELECTION**

8    Liberally construed, in his Ground Three for relief, Petitioner argues that his
9  Constitutional rights were violated by the provision of ineffective assistance of counsel
10  in failing to object to or appeal the imposition of sentencing for non-dangerous repetitive
11  offenses.  (Petition, Doc. 1 at 8.)  The jury found the armed robbery, kidnapping, and
12  aggravated assault offenses to be "dangerous offenses."  (Exhibit U, R.T. 9/10/2 at 2-5.)
13  Nonetheless, at sentencing, the state "elected" to treat the dangerous offenses as non-
14  dangerous" for sentencing purposes, resulting in a higher sentencing range under an
15  anomaly under state law.  (Exhibit V, R.T. 5/23/03 at 3-5.) The PCR court summarily
16  disposed of this claim, citing *State v. Knorr*.

17          Defendant fails to state a colorable claim that trial and
18      appellate counsel was ineffective for failing to challenge the trial
        court sentencing Defendant as a non-dangerous repeat offender.
19      Contrary to Defendant's claim, the Court can sentence a defendant
        as a repeat non-dangerous offender regardless of a jury's finding of
20      dangerousness. *See, e.g., State v. Knorr*, 186 Ariz. 300, 305-06,921
        P.2d 703, 708-09 (App. 1996). Therefore, Defendant has not
21      demonstrated that trial or appellate counsel's failure to raise this
        objection/issue fell below an objective standard of reasonableness or
22      that but for the failure to raise this issue, the outcome probably
        would have been different.

23  (Exhibit H, M.E. 11/24/08.)  Respondents argue that the PCR court properly rejected this
24  claim by correctly applying state sentencing law.  (Answer, Doc. 11 at 22.)

25    Petitioner offers nothing to show that the PCR court's determination was
26  erroneous.  Indeed, in *Knorr* Division 2 of the Arizona Court of Appeals held that
27  Arizona law does not prohibit the court from ignoring the jury's determination that an
28  offense was dangerous, and instead sentencing a defendant as a repeat, non-dangerous

offender.  That was and remains the law in Arizona. *See State v. Trujillo*, 227 Ariz. 314, 321-322, 257 P.3d 1194, 1201-1202 (App. Div. 1 2011) ("In sum, the law allows a trial court to select between the dangerous and repetitive sentencing options, but does not require that if the court chooses to sentence a defendant as a repeat offender, it must void the jury's finding of dangerousness.").

Thus, any objection by counsel would have been futile.  Failure to take futile action is never ineffective assistance of counsel.  *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996).  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."  *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

Petitioner's Ground Three is without merit and must be denied.

## E.  GROUND FOUR: IAC RE SENTENCING EXPOSURE

Liberally construed, in his Ground Four for relief, Petitioner argues that he received ineffective assistance of counsel when counsel failed to adequately advise Petitioner as to his sentencing exposure at trial.

The PCR court found that counsel performed deficiently when he failed "to inform Petitioner of his sentencing exposure at trial."  (Exhibit J, M.E. 3/4/09 at 2-3.) The PCR court rejected the state's argument that there was no prejudice:

> The State argues that the outcome would not have changed even if Defendant had been advised of the sentencing possibilities because Defendant testified that when presented with the plea, he was not interested in a plea that involved prison time. The Court is unpersuaded by this argument. The Court finds Defendant may have accepted a plea offer if he had been informed he could have been sentenced to 160 years.

(*Id.* at 2.)

The Arizona Court of Appeals reversed, holding:

> In this case, even if we accept that counsel's performance was deficient, Pitre failed to establish prejudice, a reasonable probability that "absent his attorney's deficient advice, he would have accepted

> the plea offer." This failure is reflected in the finding of the trial court that Pitre "may have accepted a plea offer. The burden is on the petitioner seeking post-conviction relief to show ineffective assistance of counsel, and the showing must be that of a provable reality, not mere speculation.

(Exhibit M, Order 5/18/10 at 7.)

Petitioner makes no argument to show that this holding was incorrect.

As noted above, Petitioner was obligated to show both deficient performance and prejudice. In the context of a rejected plea offer, the latter requires a showing of a reasonable probability that but for the deficient performance "he would have accepted the plea offer." *Nunes v. Mueller*, 350 F.3d 1045, 1054 (9th Cir. 2003).

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (U.S.,2012)

Here, the PCR court did not find a reasonable probability that Petitioner would have accepted the plea offer, but merely that he "may have." (Exhibit J, M.E. 3/4/09 at 2.) That was insufficient under federal law to establish ineffective assistance of counsel.

Moreover, Petitioner offers nothing to show that the appellate court's finding that there was no reasonable probability was erroneous or unreasonable. The court found:

> Specifically, the State correctly notes that Pitre testified at the evidentiary hearing that he would not accept any plea offer that would require prison. His counsel also testified that Pitre unambiguously informed him that he was not interested in any plea agreement that required prison. Additionally, we note Pitre never testified at the evidentiary hearing that had he been properly advised about the maximum sentence, he would have accepted a plea agreement.

(Exhibit M, Order 5/18/10 at 7.) Petitioner makes no suggestion of any error in that finding. The only portion of the record he cites is his Attachment F, that same decision by the Arizona Court of Appeals. And indeed, the Arizona Court of Appeals' decision reflects the record, including: (1) Petitioner testified at the evidentiary hearing that he

1  would not accept any plea offer that would require prison (Exhibit W, R.T. 2/27/09 at

2  24); (2) Petitioner's counsel testified that Pitre unambiguously informed him that he was

3  not interested in any plea agreement that required prison (*id.* at 36-37 ("Mr. Pitre was

4  very adamant that he did not really want to discuss any particular plea offer")); and (3)

5  Petitioner never testified at the evidentiary hearing that had he been properly advised

6  about the maximum sentence, he would have accepted a plea agreement (*id.* at 8-29).

7      Having failed to establish prejudice from any error by trial counsel in relating the

8  potential sentencing at trial, Petitioner's Ground Four is without merit and must be

9  denied.

10

11  **F. SUMMARY**

12      Petitioner's four grounds for relief are without merit.  Accordingly, his Petition

13  must be denied.

14                  **IV.  CERTIFICATE OF APPEALABILITY**

15      **Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires

16  that in habeas cases the "district court must issue or deny a certificate of appealability

17  when it enters a final order adverse to the applicant."  Such certificates are required in

18  cases concerning detention arising "out of process issued by a State court", or in a

19  proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28

20  U.S.C. § 2253(c)(1).

21      Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges

22  detention pursuant to a State court judgment.  The recommendations if accepted will

23  result in Petitioner's Petition being  resolved adversely to Petitioner.  Accordingly, a

24  decision on a certificate of appealability is required.

25      **Applicable Standards** - The standard for issuing a certificate of appealability

26  ("COA") is whether the applicant has "made a substantial showing of the denial of a

27  constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the

28  constitutional claims on the merits, the showing required to satisfy § 2253(c) is

                                        17

straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, the underlying constitutional claims are plainly without merit, and reasonable jurists would not find the district court's assessment of the constitutional claims debatable or wrong. Accordingly, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed February 6, 2012 (Doc.1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability **BE DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days

within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: October 1, 2012

12-0249r RR 12 09 18 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge

19